The next case today is Eber Isaias Hernandez-Mendez v. Merrick B. Garland, Appeal No. 20-1789. Attorney Welch, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. May it please the Court, my name is Daniel Welch. I'm appearing on behalf of the petitioner Eber Isaias Hernandez-Mendez, and may I reserve one minute for rebuttal if it becomes necessary? Yes. Thank you. This appeal was brought as a result of a final order of removal issued by the Board of Immigration Appeals denying Mr. Hernandez' application for asylum and withholding of removal. The case concerns really one question of whether the harm Mr. Hernandez experienced in his The immigration judge in this case found, and the Board of Immigration Appeals did not disturb the finding that Mr. Hernandez' testimony was credible, detailed, and persuasive. The immigration court further found Mr. Hernandez was a member of an indigenous ethnic group in Guatemala, and that he was threatened twice in Guatemala City on account of this indigenous ethnicity. Despite all of these determinations in Mr. Hernandez' favor, the immigration judge decided that his claim of past persecution had to fail because the threats he received did not rise to the level of persecution. It is Mr. Hernandez' position that this is Could you explain to us what the government action was with regard to the two incidents in Guatemala City? The government inaction, your honor, was Mr. Hernandez called the police after his second encounter with gang members. They told him that they would arrive, but they never arrived. And then the second mention Was that all? No, there was another discussion about the government action, and that was that because he lives in an indigenous village, the nearest police station is an hour and a half away by car. Those are the two examples I remember, your honor. Like I said, despite all those determinations, past persecution failed because the immigration judge found that it didn't rise to the level of persecution. We disagree with that, and we do find that it did meet that threshold. Only if one would consider the totality of petitioner's experience. It's our position that the cumulative effect of the events need be considered rather than the severity of each event in isolation. As stated in my brief, generally, persecution includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom. The experiences must rise above unpleasantness, harassment, and even basic suffering. Mr. Hernandez, I don't want to get you off track on this point. Just so I clear on a few things, how long was your client in the country from entry until now? My client has been in the country since 2013, your honor. How old is your client? I believe he is now 26 years old. What is the precipitating event for the removal? In other words, there obviously was a long period of time in which there was no notice to appear, and then all of a sudden there is a notice to appear. It's my understanding, your honor, that he affirmatively applied for asylum, and he met the one-year deadline. That's why he's eligible for asylum, and these aren't just withholding of remorse. He was in the country for some period of time after entry, and nothing was being done to have him removed? Or is that wrong? Was there a removal proceeding right away? What has happened that precipitated all of a sudden that there's now an order of removal? The proceedings take a while, your honor, but it's possible that my client was caught at the border, and he may actually have filed a defensive asylum application. I just know that the immigration judge found his asylum application to be timely. And the ground for removal is just the illegal entry? The ground for removal is that he's a Guatemalan citizen, and he has no rights to be in the United States. There's no aggravated felony, there's no criminal history? No, nothing like that, your honor, no. My understanding is that he has no criminal record whatsoever. Does he have children of his own here or not? Is that in the record? There is a mention in the record that both of his parents are deceased, your honor, and he has two little sisters that had to also come to the United States to live with him. I do not, I'm not aware, your honor, if he has children. I do not believe he does. And I take this case, there has been no mediation proceeding at any point to our camp process over this case, or has there been? Mediation in the sense of like prosecutorial discussion, your honor? No, just through our camp program, as we've done recently with certain immigration cases. Not that I'm aware of, no. So, as stated, the petitioner, Mr. Hernandez, was 15 or 16 years old when he left his indigenous village, and he went to Guatemala City to get away from the violent tribal land wars that were occurring, as well as to try and help his parents financially because they were living in extreme poverty. His younger brother died of malnutrition, and his mother... Just one last question. You made a statement that the IJ had said that he was found credible and gave detailed testimony. My understanding is the BIA also found, and I believe the IJ found, that with respect to the threats of death, the testimony was not sufficiently detailed to support a finding of persecution. What's your answer to that? The BIA certainly says that. The BIA, yes, the BIA says that. My answer is that I'm not sure if the details were the issue, your honor. The BIA says that that was the issue because it didn't give us sufficiently enough detail, but by default, that's what the BIA said. So, what's wrong with that conclusion? Is it detailed, and how is it detailed with respect to the death threats? I believe it is detailed, your honor. The immigration judge found him persuasive, credible. I don't know what about his testimony was not detailed. And I don't remember exactly that that was the issue with the Board of Immigration Appeals. My understanding was they found that the past persecution was not severe enough to constitute past persecution. And it's our position that they are taking these incidents in isolation and not giving them the cumulative effect, as well as not taking into consideration the age of the petitioner at the time. Mr. Welsh, both of these incidents involved the same gang members, am I correct? That's correct, your honor. Given that a decade has passed, could any fear that the same behavior would reoccur be well-founded? Absolutely, your honor. The reason he was approached, if you look at the record, is not because he was a young man or any reason like that. He was approached because they noticed him as an indigenous person. He looked different. He spoke different. Mom is his first language, your honor. They told him he should not be here in Guatemala City. They didn't even extort him. They just told him he needed to leave or they were going to do something to him. And then on the second occasion, when he was approached, they had guns and knives, told him the same thing, that he wasn't supposed to be in Guatemala City and that he needed to leave or else he was going to be kidnapped or killed. And so it was our position and petitioner testified that he stuck out like a sore thumb because he was different. He grew up in an indigenous village. A follow-up question from the court. Mr. Welch, you've reserved some time, so if you would mute at this time, we'll hear from Mr. Anderson. Thank you, your honor. Good morning, your honor. May it please the court, Eric Anderson, representing the Attorney General. The two parts of the case before the court today are, one, does the record compel the two threats against Mr. Hernandez-Mendez compel the finding that he experienced past persecution? If not, then the agency correctly put the burden on him to show that he has a well-founded fear of future persecution in the future on account of a protected ground. And the record shows he did not meet that burden because he could move back to his ethnicity whatsoever and feared instead suffering in a land dispute, which is not a protected ground under the Immigration and Nationality Act. And additionally, harm he feared as part of a group defined as young men recruited by gangs who resist the gangs' instructions does not meet the requirements to be a quote-unquote social group under the Immigration and Nationality Act. To start with... Can you help me with just one part of the record? Entry was in 2013, I think it's agreed, and there were proceedings taking place at least at some point in 2014. When was the notice of appear? He was served a notice right away upon entry. He was stopped upon entry and proceedings began against him at that time. No, thank you. Mr. Hernandez-Mendez was 15 or 16 years old, moved to Guatemala City to financially support his family and the village and described a total of two circumstances. In one, a group of three or four gang members approached him, made reference to his ethnicity, told them he should not be there. He was not harmed. He was not robbed. That was the end of the story. About two or three months later, a slightly larger group of six or seven people, this time brandishing weapons, again, told him he should not be there. This time they did rob him, but he was not physically harmed. And they issued a threat to him. The threat was, in his words, that he would suffer consequences. Now, we know he understood this as a threat of kidnapping. But these were not the kind of present tense imminent threat that would produce actual suffering, which is the... Here's the one statement in his affidavit. This is administrative records 170 of 171. He says, the gang members would follow me throughout the streets whenever I left my house. They would often ask me for money and threatened to kill me because I did not want to join them. Well, that's not what he testified to, Your Honor. His testimony was clear that there were a total of two incidents. But we don't have a fine. That would suggest that there would be a basis for an inconsistency. You're saying we don't have an adverse credibility finding. No, we have a finding that his testimony was credible. Exactly, Your Honor. We don't have to believe his affidavit. Because he had an opportunity at his hearing to say what happened to him. But is the affidavit not part of the record also? It's part of the record. It was not a story that he told, A, at his hearing or in his opening brief. His opening of brief agrees there were a total of two incidents. And when you're making an argument based on two incidents, it's hard to argue that the agency failed to cumulate. Mr. Anderson, let me follow up on that question. I'm a little bit puzzled. In his affidavit, in his testimony, he testified that the gangs warned him because of his ethnicity, that he was in danger. In his affidavit, he argued that the gangs, in spite of his ethnicity, asked him to be a member of the gang. Is that, I'm a little puzzled why in one place he's arguing his ethnicity was the subject of a hostile relationship to the gang. And in his affidavit, he's saying the gang asked him to join them, be part of the gang. I would not claim expertise myself on the Latin American gang motivations, Your Honor. The immigration judge's finding acknowledged there were some tensions. If there was a credibility finding, we weren't going to hold any of these things against him. But the immigration judge did observe that this was not somebody who told a completely coherent story. So the credibility finding is against this background. Well, I guess I'm just not, just looking at the, I have the record before me. I have a credibility finding. The record includes this statement and the affidavit. There's a finding by the IJ saying that he has not shown that the threats that he faced rise to the level of persecution. The BIA says there's no clear error in that. Is that considering the affidavit or not considering the affidavit? It is. The board is clear it was addressing two threats, two incidents of being threatened. Page four of the administrative record, the second page of the board decision. The IJ addressed two threats in his appeal to the board. He had an opportunity to argue if the immigration judge overlooked any of these instances. He did not. He addressed two threats. The board addressed those two threats. He again relies on these two threats in his opening brief in this court. He has abandoned any claim that there was anything more than this. Well, no, I don't think that's correct. Can I just push you on that? It says, here's what the board says. As an initial matter, we agree with the immigration judge's assessment that the response was treatment, which included two incidents of being threatened. I guess I'm just not fine. You're reading that to say that all that was argued to the BIA was those two incidents. Is that what the briefing to the BIA showed? Did it not reference the affidavit? My recollection is that the brief to the board addressed the two threats that he testified about. I believe that when the board says, I'm sorry. With no reference to the affidavit. No reference to the affidavit. And when the board said included two threats, it was describing the universe. It was not hiding some other things behind the word included. At bottom, just to wrap up on the past persecution part. The petition for you should be denied unless the record compels a contrary conclusion. And we don't believe it does in this case. Then, with the burden on Mr. Hernandez-Mendez to establish a well-founded fear of future persecution, there are two grounds. His ethnicity, everyone agreed that this group that speaks the MAM dialect is a particular social group. However, leaving Guatemala City, he went back to his village, which consisted entirely of MAM speakers. And he expressed no fear whatsoever of suffering on behalf of his ethnicity there. Instead, the whole issue was this land dispute. And the dispute over land with a neighboring village is not a protected ground under the INA. So, ethnicity is out. Then, there is the issue of the group of young men targeted by gangs who resist their orders. This court has agreed with the board that the INA imposes certain requirements on cognizable particular social groups. Briefly, immutability, particularity, social distinction. Both the immigration judge and the board faulted this group on its lack of particularity. It did not define a discrete group. It was amorphous, overbroad. It could not accurately identify who were members and who was not. And in this court, he did not challenge that particularity finding. And therefore, his group cannot qualify as a basis for asylum. And unless there are... Yes, your honor. Mr. Anderson, I have one more question about the record. When the petitioner's counsel elicited from him something of the details of the two incidents, have you been able to extrapolate how old he was at the time of either or both of those incidents? I believe a range of 15 to 16 years old. He was not an infant or even a young child. He was old enough to go to Guatemala City on his own to support his family. Well, how old was he when he came to this country? I thought he was 16. He was 18. There was... The record indicates on an initial encounter, the year was off by two digits, 1993 versus 1995. That was later clarified. And he was 18 years old upon entry to this country. Okay. Thank you. I just had one further question. Just with respect to the CAMP program, I think we've had you as counsel before. We've ended up sending something into the CAMP program, but if I'm... This is my first time having the pleasure of talking before you, your honor. You can... Well, you're familiar with how that has occurred in some recent cases. And I guess I'm just wondering if the government has a view about that in light of the ground for the removal here and the length of time in the country and the fact that he came in. I suppose you're saying he came in as an adult. He was 18 years old. Your honor, Mr. Hernandez-Mendez, through counsel, is free to approach DHS at any point to see what they would agree to, what their intentions are. He could do that six months ago, yesterday, tomorrow, he could do that. Obviously, if he prevails in this court, he won't need to do that. If the government prevails in this court, he could go the next day to DHS and see what their intentions are and ask them to refrain from removal. If the court wants to engage its offices, there would be no objection from me to doing that. But the issues are here squarely presented, and we don't think there's any basis for granting the petition. Thank you, Mr. Anderson. If you would mute at this time. Mr. Welch? Yes, your honor. I can explain the confusion with regard to the affidavit. You must remember that this is one of the most uneducated clients that an attorney will ever meet. No offense to my client, of course, but his first language is MAM. Even our Spanish interpreters don't understand very well these MAM indigenous language. What happens is he conflated two events. He didn't want to stay in his village because there was a land war, and the people in his village were following him around and trying to make him fight in the land war. If he wouldn't fight in the land war, then he had to pay a tax. That's why the attorney that was doing the affidavit thought that it was gang extortion. It wasn't gang extortion. Mr. Welch, what you're telling us is that there were only two events in Guatemala City, and the other event, the one in the affidavit, really occurred in his own village, where his friends and neighbors were asking him to join them in a fight with a neighboring village. Exactly, your honor. Correct. And then the two events that happened in Guatemala City were, again, because he was indigenous, he was a sore thumb, he stuck out. But what wasn't considered is the fact that his freedom to work was lost. He was forced to move back to his extreme poverty into his indigenous village and live between warring tribes, and he lost all freedom to work. The economic restrictions are so severe on this person. He's lost his right to work. He's lost his freedom. Just so I understand on the affidavit, are you saying then the affidavit is not relevant to the question of persecution? The affidavit is written in a way that the communication was completely... They didn't understand each other. The person that wrote the affidavit did not have effective communication with the client. Are you saying that the affidavit is not part of the case for establishing persecution? The affidavit, I would not rely on, your honor, as part of the case, because unfortunately, the communication broke down, and it is very difficult for a Spanish interpreter to understand all of the things a ma'am speaker is saying, as well as immigration attorneys get used to certain persecution. A lot of times what we hear is, I was extorted by gangs. Unfortunately, what happened was the attorney that did this affidavit made an assumption, and it was to the client's detriment because he's an indigenous person that left his village, went to Guatemala City, tried to work to help his family, and then was persecuted in Guatemala City and had to go back to his village, lost his right to work and to make a better life for himself, putting him under severe economic restrictions that it constitutes persecution. Actually, addressing both counsel, there's been some discussion today about the potential for With respect to petitions in the immigration context, it is not automatic that cases get referred to our mediation program before they are brought for oral argument or other disposition. However, as Judge Barron has pointed out, there are cases in which we offer up our mediation program. There is absolutely no imperative or anything like that. You heard Mr. Anderson invite further discussion if that's what you or your client prefer. To the extent that the parties would like to take advantage of our mediation program, the court would like to hear from you with respect to that request. That would be both parties need to agree to it in order for it to which takes us one day beyond the holiday. Or if you need more time to decide whether you even want to take advantage of our mediation program, you'll have to ask for an extension. So we'll expect to hear this week or the first of next week. Otherwise, we will proceed. Thank you both. That concludes argument in this case. Attorney Welch and Attorney Anderson, you should disconnect from the hearing at this time.